UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL L. COPLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:04CV00454 AGF |
| | ) |
| TOM SUTTERER, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the joint motion for summary judgment by Defendants Donna Augustine, Joel Meador, and Gabe Crawford.[1] Plaintiff Daniel Coplin is pursuing this action, filed under 42 U.S.C. § 1983, pro se. He claims that Augustine, Meador, and Crawford, all employees of the Missouri Department of Mental Health, violated his constitutional rights while he was a patient at Southeast Missouri Mental Health Center (SEMMHC). Specifically he asserts that Meador and Crawford failed to protect him from an attack by another patient, and that Augustine failed to provide him with adequate medical treatment for pain and injuries resulting from the attack. Plaintiff seeks actual and punitive damages. For the reasons set forth below, the motion for summary judgment shall be granted as to Defendants Meador, Crawford, and Augustine.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). A separate motion for summary judgment has also been filed by the remaining Defendants, Gary Shaaf, et al., and will be addressed by separate order.

# BACKGROUND

The record establishes that on March 8, 2002, Plaintiff was transferred from the Perry County Detention Center, where he was a pre-trial detainee, to SEMMHC, upon his own request, due to depressive and suicidal thoughts. On April 14, 2002, another patient at SEMMHC named Michael Quinlan attacked Plaintiff. Plaintiff testified by deposition that prior to that day, he only knew Quinlan "in passing by" and had had no "run-ins" with him. According to Plaintiff, Quinlan was in the kitchen on the ward where he and Plaintiff were housed. Crawford and Meador, who were aides on duty at the time, asked Quinlan to leave the kitchen and when he did, he threw a chair at Crawford, hitting him in the knee. Plaintiff testified that Quinlan then "immediately came and tried to assault me," kicking Plaintiff and throwing a cup of ice in his face. Pl.'s Depo. at 57-63.

Plaintiff testified that Crawford and Meador instructed Plaintiff to go to his room, which was nearby, and that they tried to calm Quinlan down. Plaintiff testified that he did as he was told and while he was sitting on his bed he could hear Quinlan saying that Plaintiff was laughing at him. Quinlan then ran into Plaintiff's room and jumped on Plaintiff, landing on top of him. "[N]ot long after that," Crawford came into the room and pulled Quinlan off Plaintiff. Plaintiff could feel that he was hurt in his back and neck and he told Crawford and Meador that he wanted to see a doctor. A doctor came to the ward, examined Plaintiff, and prescribed Motrin. Plaintiff testified that he continually asked SEMMHC staff members, including Augustine, who was Plaintiff's case counselor, to have x-rays taken of his back, which was hurting him. One or two days after the attack, another doctor examined Plaintiff, and eight days after the attack, x-rays were

2

taken of Plaintiff's back. Plaintiff was then prescribed medication for arthritis. Pl.'s Depo. at 63-84.

On April 24, 2002, Plaintiff was transferred from SEMMHC back to jail. In a report dated that day, Augustine advised the jail officials that Plaintiff should remain on suicide watch while in jail. She noted that Plaintiff was on medication for depression and anxiety and the "[r]outine" medications were being sent to the jail for him. Augustine advised that "mouth checks" should be conducted to make sure Plaintiff swallowed his medication, explaining that SEMMHC has discontinued giving Plaintiff psychotropic medications because it was discovered that he had saved 22 pills which he was planning to take in jail.

The record contains a neurosurgeon's office note dated February 19, 2003, stating that a recent cervical and lumbar myelogram indicated that Plaintiff had mild to moderate degenerative changes with mild nerve compression at C6-7. The surgeon stated that it was clear to him that Plaintiff's abnormality in his cervical and lumbar regions predated his injuries of April 14, 2002, and that his condition was likely the result of degenerative changes and not acute injury.

Defendants argue that they are entitled to summary judgment because the evidence shows that there are no genuine issues of material facts as to any of his claims, and for the further reason that they are entitled to qualified immunity.

# DISCUSSION

## Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Johnson v. Crooks, 326 F.3d 995, 1005-06 (8th Cir. 2003); Hott v. Hennepin County, Minn., 260 F.3d 901, 904 (8th Cir. 2001).

The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law." Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S.574, 587 (1986).

**Failure to Protect Claim - Meador and Crawford**

As a pretrial detainee confined in a state mental health facility, Plaintiff's claims arise under the substantive due process protections of the Fourteenth Amendment, and are analyzed under the same standards as similar claims brought by prisoners based upon the Eighth Amendment. See Revels v. Vincenz, 382 F.3d 870, 874-75 (8th Cir. 2004); Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005). To sustain a constitutional claim based on the failure to protect the plaintiff from other inmates, a plaintiff must show that he was incarcerated "under conditions posing a substantial risk of serious harm and that the prison officials actually knew of and disregarded the risk to [his] health and safety." Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); see also Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003).

Here, based upon Plaintiff's own deposition testimony, the Court concludes that Plaintiff has failed to produce evidence from which a jury could conclude that Meador or Crawford knew of and were deliberately indifferent to a substantial risk of serious injury to Plaintiff. No evidence in the record identifies a risk that Meador and Crawford disregarded thus jeopardizing Plaintiff's safety. Plaintiff and Quinlan were only passing acquaintances with no previous altercations and there was no expectation or notice that Quinlan would assault Plaintiff in response to being asked to leave the ward kitchen. Moreover, there is no evidence to suggest that Meador and Crawford failed to proceed reasonably to protect Plaintiff's safety during the incident. Accordingly, Meador and Crawford are entitled to summary judgment in this case. See Leonard v. Muhm, 2006 WL 1379635, *1 (8th Cir. May 22, 2006); Pagels, 335 F.3d at 403 F.3d at 74-41.

**Inadequate Medical Treatment Claim - Augustine**

To survive summary judgment on a claim of inadequate medical treatment for § 1983 purposes, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"; the plaintiff "must show more than negligence, more even than gross negligence." Alberson v. Norris, 458 F.3d 762, 766 (8th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Deliberate indifference may be manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment. Maloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) (citing Estelle, 429 U.S. at 104-05).

The Court first concludes that the delay of eight days before x-rays of Plaintiff's back were taken, even if Augustine were somehow responsible for this delay, does not rise to the level of a constitutional violation. It is undisputed that a doctor examined Plaintiff promptly after the incident, and did not order x-rays, prescribing only Motrin. Within a few days after the incident, Plaintiff was seen by a second doctor, who also did not order x-rays. Plaintiff has not alleged that Augustine ignored an acute or escalating condition, or that the delay in treatment aggravated his condition. See Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990) ("[w]ithout any allegation that the defendants ignored an acute or escalating situation involving a serious mental condition, we cannot conclude that a one-month delay in providing treatment for leg pain clearly amounted to deliberate indifference to a serious medical need."). From the record, there is no evidence that the treatment would have been any different had x-rays been taken immediately.

Plaintiff also asserts that during the eight days between the assault and April 22, 2002, he repeatedly told Augustine that he was in severe pain and requested medical attention and x-rays of his back, but these requests were denied, and that "many times" he was even refused the Motrin. Plaintiff, however, does not assert, nor does it appear from the record, that Augustine was in charge of distributing Plaintiff's pain medication or involved in Plaintiff not receiving his Motrin "many times." The Court concludes that Plaintiff has not presented a jury question on whether Augustine facilitated, approved, or condoned Plaintiff not receiving his Motrin. See Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (prison official must be personally involved in denial of medial treatment to be liable under § 1983); Belt v. Boyd, No. 05-4022, 2006 WL 2591484, at *7-10 (D. S.D. Sept. 8, 2006) (granting summary judgment to prison officials where evidence did not show that they were personally involved in plaintiff missing several doses of prescription pain medication).

In his response to Defendants' motion for summary judgment, Plaintiff asserts for the first time that after the assault by Quinlan, Augustine no longer ensured that Plaintiff received proper mental health treatment, but rather tried to cover matters up and prematurely discharge Plaintiff. This claim against Augustine has previously been dismissed by this Court. (Doc #12 at 4-5).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants Meador, Crawford,

and Augustine for summary judgment is **GRANTED.** [Doc. # 64]

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of September, 2006.