UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL L. COPLIN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:04CV00454 AGF |
| BOB WILLS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the joint motion for summary judgment filed by Defendants Perry County, Missouri; Gary Schaff, the Sheriff of Perry County; and two jailors at the Perry County jail -- Chris Tullock and "Captain" Wayne Craft. Plaintiff Daniel Coplin filed this action under 42 U.S.C. § 1983 pro se, claiming that his constitutional rights were violated while he was confined at the Perry County jail and the Southeast Missouri Mental Health Center ("SMMHC"). By Memorandum and Order dated October 4, 2004, numerous claims against various Defendants were dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(b). Two Defendants were thereafter dismissed for Plaintiff's failure to obtain service on them. By Memorandum and Order dated September 19, 2006, the motion for summary judgment filed by three of the remaining Defendants (Michael Meador, Joel Crawford, and Donna Augustine) was granted. The claims at issue now are the last remaining claims in the action.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

For the reasons set forth below, the motion of the Perry County Defendants ("Defendants") for summary judgment shall be granted. The Memorandum and Order of October 4, 2004, however, must be amended with respect to one Defendant, Doris Arnett, who was improvidently dismissed from this action before service of process. In addition, the Court's Memorandum and Order of September 19, 2006, shall be slightly amended.

## **BACKGROUND**

The record establishes that on February 27, 2002, while Plaintiff was incarcerated in general population at the Perry County jail, he was served with warrants for his arrest on ten counts of statutory sodomy. On March 8, 2002, Plaintiff was transported from the jail to SMMHC for evaluation of being depressed and suicidal. He was returned to the jail on April 24, 2002, with directions from SMMHC that he should remain on suicide watch while in jail, with "1:1 supervision," and that he should be monitored for compliance with his medications for depression and anxiety. Am. Compl., Doc. #7-2 at 24. Plaintiff was, accordingly, placed in the "observation cell" (or "drunk tank") at the jail.

On May 9, 2003, Plaintiff was taken to SMMHC for an evaluation of whether he could stand trial, and was returned to the jail that day with recommendations similar to those of April 24, 2002. Def. Ex., Doc. #68-3 at 8. On May 14, 2003, Plaintiff was convicted of four of the ten sodomy counts. He continued to be housed at the Perry County jail until June 27, 2003, when he was transferred to the Missouri Department of Corrections. From the date of his conviction until his transfer out of the jail, he was housed in general population.

Three altercations between Plaintiff and other prisoners at the jail are documented in the record. One occurred sometime after Plaintiff was charged with the sexual offenses but before March 8, 2002. Plaintiff testified by deposition that an inmate, whom Plaintiff did not know beforehand, hit Plaintiff because of the charges that were filed against Plaintiff. Plaintiff testified that he was not injured in the fight. Another altercation occurred on January 3, 2003, when Plaintiff and other prisoners were being escorted to church; Plaintiff reportedly struck another prisoner in the face, apparently in response to taunts that Plaintiff was a "baby raper." Def. Ex,. Doc. #68-3 at 11-12. And the third altercation occurred on June 26, 2003, again when inmates were on the way to church. This time, another inmate charged at Plaintiff and the two began exchanging punches; they were separated by guards and placed in lock down. Id. at 9. During the time that Plaintiff was in the observation cell, other offenders were periodically placed in the cell with him, including the uncle of the victim of Plaintiff's sexual crimes. Plaintiff testified by deposition that he did not get into any fights with these offenders.

Plaintiff claims that the individual Defendants violated his constitutional rights, especially after his return to the Perry County jail from SMMHC on April 24, 2002, by failing to provide adequate separation between Plaintiff and other prisoners; not following all the directives of SMMHC for his treatment; placing other detainees in the drunk tank with him; allowing him only one shower per week, at most; forcing him to bathe from a bucket for "much of the eight months" that he was at the jail; and failing to provide a "protective custody cell" to protect him from daily threats of violence from other prisoners, who were abusive to him in light of the nature of his offenses and his

3

"high profile" case. Plaintiff claims that as a result of Defendants' failure to ensure his mental and physical welfare, he experienced numerous assaults and abuse from other prisoners, as well as constant fear and anxiety. He seeks actual, punitive, and nominal damages. Plaintiff posits Perry County's liability on its failure to provide a "mentally safe environment and adequate facilities for mentally impaired inmates such as Plaintiff." Pl.'s Compl. & Aff., & Resp. to Mot'n for Sum. Judg., Doc. #7 & Doc. #82.

Defendants argue that the evidence shows that there are no genuine issues as to any material facts and that they are entitled to judgment as a matter of law. In support of their motion for summary judgment, they have submitted the affidavit of Defendant Schaaf, who attests to the following. The "observation room" in which Plaintiff was placed upon his return to the Perry County jail from SMMHC on April 24, 2002, allows 24-hour surveillance and has a sink and toilet. Persons in the observation room are allowed to take showers upon request, accompanied by a guard. After Plaintiff was convicted of the sodomy charges on May 14, 2003, he "was cleared" to be placed in general population, where he remained until his transfer out of the jail on June 27, 2003.

Defendants have also submitted the affidavit of Defendant Tullock, who attests in conformity with Schaaf's affidavit that prisoners in the observation cell could take a shower upon request any time that a guard was available to escort them. Tullock stated further that "from time to time," Plaintiff was given showers, but that Plaintiff generally requested a bucket of water and a wash cloth, which were provided to him. Tullock attested that no staff members at the jail knew that one of the offenders placed in Plaintiff's cell was the uncle of the victim (and related to Plaintiff).

4

In response, Plaintiff reiterates his complaints that the Perry County Defendants placed other inmates in the drunk tank with him and placed him in general population at the jail from May 14 to June 27, 2003, despite SMMHC's recommendations and knowing that he was in mental duress. He argues that this demonstrated Defendants' deliberate indifference to his medical needs, and resulted in his experiencing stress and attempting suicide.

## DISCUSSION

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Johnson v. Crooks, 326 F.3d 995, 1005-06 (8th Cir. 2003); Hott v. Hennepin County, Minn., 260 F.3d 901, 904 (8th Cir. 2001).

The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law." Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth

specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Failure to Protect and Conditions of Confinement**

Plaintiff's claims against the individual Defendants involve allegations that they failed to protect him from other inmates at the jail, and confined him under conditions that caused him mental anguish. For part of the time in question, Plaintiff was a pretrial detainee; for the remainder of the time, he was a convicted felon. Plaintiff's claims as a pretrial detainee arise under the substantive due process protections of the Fourteenth Amendment; his claims as a convicted prisoner arise under the Eighth Amendment. "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Kahle v. Leonard, ___ F.3d ___, 2007 WL 438769, at *3 (8th Cir. Feb. 12, 2007); see also Hott, 260 F.3d at 905; Smith v. Copeland, 87 F.3d 265, 268 n.4 (8th Cir. 1996).

To sustain a constitutional claim based on the failure to protect him from other inmates, either as a pretrial detainee or as a convicted prisoner, Plaintiff must show that he was incarcerated "under conditions posing a substantial risk of serious harm and that the prison officials actually knew of and disregarded the risk to [his] health and safety." Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); see also Pagels v. Morrison, 335 F.3d 736, 739-40 (8th Cir. 2003); Curry v. Christ, 226 F.3d 974, 977 (8th Cir. 2000).

6

> The deliberate-indifference standard is a subjective one: "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The official need not believe that serious harm will actually befall an inmate; it is sufficient that the official knows of a substantial risk that the inmate will suffer serious harm."

Kahle, 2007 WL 438769, at *4 (quoting Farmer v. Brennan, 511 U.S. 825, 837(1994)).

Prison and jail officials must provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (citation omitted).

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. [Supreme Court] cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, . . . [and] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

Id. at 834 (citations omitted). Second, the official must know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, to prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the prison official acted with a sufficiently culpable state of mind.

Upon review of the record in this case, the Court concludes that Plaintiff has failed to produce evidence from which a jury could conclude that Defendants violated Plaintiff's constitutional rights. First, the Court concludes that, taking as true Plaintiff's assertions that he was allowed at most one shower per week and was provided with a bucket of water and a wash cloth when requested, he was not thereby denied the minimal civilized measure of life necessities or exposed to a substantial risk of serious harm. See Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (finding that one shower per week was constitutionally sufficient for inmates in administrative segregation). Here, Plaintiff has not alleged any specific harm as a result of his shower/bathing privileges while at the jail.

Second, Plaintiff has not presented a jury question either with regard to having other inmates placed in the drunk tank with him, intermittently and briefly, or with regard to being in general population for approximately six weeks following his conviction. Plaintiff has not alleged that any altercations resulted from others being placed in the drunk tank, and he nowhere alleged that he actually sustained any serious physical harm from any of the altercations with other inmates. Courts have recognized that conditions that inflict serious mental pain or injury also implicate the Eighth Amendment. See Scher v. Engelke, 943 F.2d 921, 924 (8th Cir. 1991) (holding that evidence of fear, mental anguish, and misery inflicted through frequent retaliatory cell searches could suffice as the requisite injury for an Eighth Amendment claim); Fleming v. Neb. Dep't of Corr. Servs., 2006 WL 2990355, at *11 (D. Neb. Oct. 18, 2006) (quoting Rogers v. Thomas, 879 F.2d 380, 384 (8th Cir. 1989)) (holding that in order to establish an eighth

8

amendment violation, "a prisoner must establish the unnecessary and wanton infliction of pain, mental or physical"). The length of confinement is a factor that must be considered, along with the totality of the conditions of the confinement. Scher, 943 F.2d at 924.

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), Plaintiff would be precluded from recovering actual damages for the alleged mental anguish he suffered as a result of other inmates being placed in the drunk tank with him, or as a result of being in general population for approximately six weeks. Although nominal and punitive damages would be recoverable for a violation of Plaintiff's constitutional rights, the Court, even viewing the evidence in the light most favorable to Plaintiff, concludes that no reasonable jury could find such a violation here. When Plaintiff exhibited depression and suicidal tendencies, he was transported from the jail to SMMHC for evaluation. When he was returned to the jail, the directions from SMMHC that he should be on suicide watch and monitored for compliance with his medications for depression and anxiety, essentially were followed. There is no suggestion in the record that being placed thereafter in general population for six weeks following his conviction caused any lasting mental injury. The Court does not believe that the fact that other inmates in general population taunted Plaintiff due to the nature of his crimes and that he found this stressful is sufficient to subject the jail officials to Eighth Amendment liability for placing him in general population.

Perry County is entitled to summary judgment as Plaintiff has not established that his constitutional rights were violated by any county official or policy. See, e.g., McCoy v. City of Monticello, 411 F.3d 920, 922-23 (8th Cir. 2005) (stating that the

"consistently recognized" general rule that, "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

**<u>Amendment to Court's October 4, 2004 and September 19, 2006 Memoranda and Orders</u>**

As noted above, by Memorandum and Order dated October 4, 2004, the Court dismissed Plaintiff's claims against numerous Defendants as frivolous under 28 U.S.C. § 1915(e)(2)(b), including all claims against Dorris Arnett. Plaintiff had asserted that Arnett, a nurse at SMMHC, violated his constitutional rights (1) by failing to take adequate security precautions when talking to another inmate in an unsecured area, immediately before that inmate assaulted Plaintiff on April 14, 2002, and (2) by providing inadequate medical care after Plaintiff was attacked by this inmate and seen by a doctor. With regard to the claim of inadequate medical care, Plaintiff alleged, specifically, that Arnett disregarded his complaints of pain for two days after the assault, before she contacted a second doctor. He further alleged that Arnett denied Plaintiff Motrin "numerous times" between April 14, 2002, when it was first prescribed, and April 22, 2002, when x-rays of Plaintiff's back were taken and he was prescribed medication for arthritis.

In its Order of October 4, 2004, the Court properly dismissed, as frivolous, the first claim, related to the failure to take adequate security precautions. The Order failed to address, however, the allegations that Arnett deliberately failed to provide proper medical care. Upon sua sponte review of the file, the Court concludes that the allegations regarding the failure to provide adequate medical care are not factually or legally

10

frivolous, and that process should have been allowed to issue against Arnett on these claims. While Plaintiff may or may not be able to prevail on these claims, the Court cannot say, on the current record, that Arnett is entitled to judgment as a matter of law.

The Court also notes that the October 4, 2004 Memorandum and Order dismissed Defendant Sue Wade from this action on the ground that Plaintiff had not asserted any allegations against her. A close reading of Plaintiff's first amended complaint, however, reveals that Plaintiff asserted that Wade, a supervisory official at SMMHC, transferred Plaintiff to a more secure area in SMMHC without any reason for doing so and in violation of state rules. Nevertheless, this claim is indeed frivolous, and so the dismissal of Wade from this action was warranted on grounds of frivolity. Similarly, some allegations were not directly addressed in the Court's Memorandum and Order granting Meador, Crawford, and Augustine summary judgment. These allegations were that Augustine transferred Plaintiff in conjunction with Wade, attempted to cover up the attack upon Plaintiff by the other patient, and refused to call the police about it. The Court concludes that these allegations, even if true, would not comprise a constitutional violation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants Gary Schaaf; Chris Tullock; Wayne Craft; and Perry County, Missouri, for summary judgment is **GRANTED**. [Doc. #67]

**IT IS FURTHER ORDERED** that this Court's Memoranda and Orders dated October 4, 2004, and September 19, 2006, are amended as set forth herein.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall issue process or cause process to issue upon the amended complaint as to Defendant Doris Arnett on the claim that she failed to provide proper medical treatment.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of February, 2007.